**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**JOHN JOE DOE C.D.,** :

:

    **Plaintiff** : **CIVIL ACTION NO. 3:20-0088**

:

    **v** :

: **(JUDGE MANNION)**

**CAREER TECHNOLOGY CENTER**
**OF LACKAWANNA COUNTY and** :
**SCRANTON SCHOOL DISTRICT,**

:

    **Defendants**

# M E M O R A N D U M

This Memorandum involves the ninth case that is substantially similar to eight other cases currently before this court arising out of alleged pervasive sexual abuse and harassment of minor male public school students, from four school districts, by one of their teachers while they were taking classes at the County Career Technology Center.[1] Pending before the court in this case are the motions to dismiss the plaintiff's complaint on behalf of defendant Career Technology Center of Lackawanna County ("CTC"), (Doc. 7), and on behalf

---

[1]The related other eight cases are Civil Nos. 19-1146, 19-1147, 19-1148, 19-1149, 19-1150, 19-1153, 19-1154, and 19-1155. The court notes that for purposes of discovery it has consolidated the stated cases. (Doc. 16, Civil No. 19-1154). The four defendant school districts are Valley View, Lakeland, Mid Valley, and Scranton.

The allegations of C.D. appear to mirror the earlier filed pleadings made in the complaints of the other eight plaintiffs, as C.D. raises the same six federal claims that were raised by the other plaintiffs. The court has previously ruled on the motions to dismiss filed by CTC and the school districts in the other cases. *See* B.W. v. CTC, — F.Supp.3d —, 2019 WL 5692770 (M.D.Pa. Nov. 4, 2019).

of the defendant Scranton School District ("SSD"), (Doc. 9). Both of the motions are filed pursuant to [Fed.R.Civ.P. 12(b)(6)](). Plaintiff C.D.,[2] a male minor student during the relevant time, alleges that while he was enrolled at SSD during the 2016-2017 school year, he was also enrolled in the automotive technology program at CTC, and was sexually harassed, assaulted and abused by a teacher. In his complaint, plaintiff raises six federal claims, three claims allege violations under Title IX of the Educational Amendments of 1972, [20 U.S.C. §1681](), *et seq.* (hereinafter "Title IX"), Counts I-III, and three claims alleging violations of C.D.'s constitutional rights under the Fourteenth Amendment brought pursuant to [42 U.S.C. §1983](), Counts IV-VI. C.D. also raises two state law tort claims, namely, negligence and negligent infliction of emotional distress ("NIED"), Counts VII & VIII. Based on the following, defendants' motions will be **GRANTED IN PART** and **DENIED IN PART**.

## I. PROCEDURAL HISTORY

By way of relevant background, on May 17, 2019, plaintiff initiated the instant action against defendants CTC and SSD by filing a Writ of Summons in Lackawanna County Court of Common Pleas. On January 10, 2020, plaintiff filed a complaint in the County Court. CTC removed this case to federal court on January 16, 2020. (Doc. 1). On January 30, 2020, CTC and

_____

[2]The court notes that it will simply refer to plaintiff herein as C.D. as opposed to "John Joe Doe C.D." as named in his complaint.

SSD filed their motions to dismiss plaintiff C.D.'s complaint. (Doc. 2). CTC moves to dismiss the federal claims against it in Counts II, III and V, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, as well as the two state law tort claims in Counts VII and VIII based on immunity under the Political Subdivision Tort Claims Act. (Doc. 6). SSD moves for dismissal of all six federal claims asserted in the plaintiff's complaint against it under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, and for dismissal of the two state law claims under the Political Subdivision Tort Claims Act. (Doc. 9). The motions of CTC and SSD have been briefed by the parties.

## II.    FACTUAL BACKGROUND[3]

CTC, with the approval of SSD, hired Richard Humphrey as an

---

[3]All facts are taken from plaintiff's complaint unless otherwise noted. The facts alleged in plaintiff's complaint must be accepted as true in considering the defendants' motions to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005). As indicated, there are presently eight other similar lawsuits filed against CTC and the four school districts basically alleging that minor male students were sexually abused by Humphrey and, that CTC and the school districts failed to take actions to protect the students and prevent the abuse.

Also, since the correct standard of review applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6) are stated in the briefs of the parties, the court does not repeat it herein. Suffice to say that dismissal is appropriate only if, accepting all of the facts alleged in the complaints as true, the plaintiffs have failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965.

automotive technology teacher in July 2015, and both defendants supervised him.

During the 2016-2017 school year, the plaintiff was a male minor student enrolled at SSD. He was also enrolled in the automotive technology program at CTC. The plaintiff's automotive teacher at CTC was Humphrey.

As the school year progressed, Humphrey began making unwanted sexual advances towards several male minor students in his class, including the plaintiff, and began using vulgar and sexually explicit language. Humphrey also constantly engaged in inappropriate and unwanted physical contact with his students, including the plaintiff, such as rubbing their backs and shoulders, putting his arms around them, placing his hand on their thighs, caressing and slapping their genital areas ("ball tapping"), and following them into the bathroom and offering to "dab" their penis after they urinated. Many of Humphrey's inappropriate sexual harassment and abuse of the students occurred in his classroom with another teacher or teacher's aide present, including Joseph Granteed, Robert Hudak and Louis Morgantini. It is further alleged that the conduct of Humphrey was open, widespread and known by students, staff and administrators of CTC and SSD.

Several times in March 2017, Morgantini, a teacher in the automotive technology class at CTC, was told by students in the class, including C.D., about Humphrey's conduct and he acknowledged that he was aware of it. Morgantini, told minor students in the class that he saw Humphrey acting inappropriately with them, that the conduct was "not right", and that he would

4

"keep an eye on him." Morgantini also told the students that if Humphrey's conduct continued, he would do something about it and speak to others. When further reports of Humphrey's improper conduct were made to Morgantini by students, he responded by telling students not to worry about Humphrey and to ignore him because "you know the way he is."

Additionally, it is alleged that Humphrey offered the students "special privileges" allowing them to come to his class early and stay late, and that he would use this extra time to sexually abuse the students.

"Upon information and belief", plaintiff alleges that Morgantini, had a to report Humphrey's sexually abusive conduct under Pennsylvania law, 23 Pa.C.S.A §6311, and in fact reported the behavior of Humphrey to the administrators of CTC and SSD, but they failed to take any action. Alternatively, plaintiff alleges that if Morgantini failed to report Humphrey's inappropriate conduct to administrators, it was due to defendants' failure to implement and enforce proper policies and procedures as well as proper training regarding mandatory reporting obligations under the law.[4]

On May 13, 2017, a referral was made to Pennsylvania's statewide child abuse registry reporting Humphrey to the Pennsylvania ChildLine Registry, a statewide database, pursuant to the Pennsylvania Child Protective Services

---

[4]Pennsylvania's Child Protective Services Law ("CPSL"), 23 Pa. C.S.A. §6311(a)(4) and (c), provide that "a school employee" is a mandated reporter and "shall make a report of suspected child abuse, ..., if the person has reasonable cause to suspect that a child is a victim of child abuse", and "shall immediately thereafter notify the person in charge of the ..., school."

5

Law, 23 Pa.C.S.A. §6318, *et seq*. ("CPSL").[5] The ChildLine Report concerned Humphrey's inappropriate conduct with his students in his CTC automotive class. Detective Jeffrey Gilroy of the Scranton Police Department ("SPD") then began a criminal investigation into Humphrey.

Soon thereafter, on May 15, 2017, Humphrey was suspended with pay by CTC. Subsequently, Humphrey was forced to resign his teaching position at CTC.

In July and December of 2017, criminal charges were filed against Humphrey in Lackawanna County Court of Common Pleas. Humphrey was subsequently convicted of several counts of indecent assault of his students while he was a teacher at CTC and he was sentenced to prison. *See* Com. of PA v. Riley, Docket Nos. CP-35-CR-0002721-2017, CP-35-CR-0001684-2017, and CP-35-CR-0002721-1564.[6]

---

[5]The child abuse registry, "known as ChildLine, is operated and maintained by the Pennsylvania Department of Public Welfare ("DPW")." Mulholland v. Government County of Berks, Pa.,706 F.3d 227, 231-32 (3d Cir. 2013)

[6]Specifically, on January 25, 2018, Humphrey pled guilty to 11 counts of indecent assault and one count of corruption of minors in the Lackawanna County Court of Common Pleas. Humphrey was sentenced on July 24, 2018, in all three criminal cases, to an aggregate of 11 to 33 months' imprisonment and at the time of the filing of this motion was serving his sentence in Lackawanna County Prison. The County Court also adjudicated Humphrey a Sexually Violent Predator under Pennsylvania law.

The court notes that the Lackawanna County Criminal Dockets for Humphrey can be found at http://ujsportal.pacourts.us. The court can take judicial notice of the Lackawanna County Court Criminal Dockets for purposes
(continued...)

As a result of Humphrey's sexual abuse and harassment of plaintiff C.D., it is alleged that his life was severely and permanently damaged due to Humphrey's conduct and, his injuries were exacerbated by the failure of CTC and the school district to investigate Humphrey's misconduct in the class and his "inappropriate/questionable/suspicious behavior", and by defendants' failure to prevent and to investigate Humphrey's misconduct. It is also alleged that CTC failed to prevent Humphrey from being hired and that CTC and SSD failed to take immediate action against Humphrey when they were made aware of his misconduct. Further, it is alleged that both defendants failed to provide a safe and secure environment for the plaintiff, and that they knew or should have known about Humphrey's misconduct.

Additionally, plaintiff alleges that he suffered further physical and emotional injuries as a result of retaliation against him during the remainder of his enrollment at CTC because of his role in reporting Humphrey's abuses and cooperating with law enforcement officials.

With respect to SSD, plaintiff alleges that "upon information and belief,"

---

[6](...continued)
of defendants' instant motions as an official state court record and matters of public record. *See* <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007); <u>Buck v. Hampton Twp. Sch. Dist.</u>, 452 F.3d 256, 260 (3d Cir. 2006)(In considering a Rule 12 motion, the court may consider documents "that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.")(citations omitted).

further discovery may reveal that "Humphrey's conduct was [] open, widespread and known by staff and administrators of [defendant SSD], including Board Members, principals and/or superintendents."

Plaintiff C.D. also alleges as follows:

Upon information and belief, ..., Defendant [SSD] knew or should have known of Richard Humphrey's inappropriate conduct with multiple minor students in the Automotive Technology class including Plaintiff C.D. and should have taken some action to end the conduct, yet Defendant [SSD] was recklessly and deliberately indifferent to the need to: adequately monitor Richard Humphrey and protect the minor students from sexual misconduct, sexual abuse and/or harassment by their teacher while such minor students were in the care, custody and control of Defendant, CTC and Defendant [SSD]; supervise Richard Humphrey; investigate the inappropriate conduct; protect Plaintiff C.D.; remove and/or suspend Richard Humphrey; and/or train Richard Humphrey and/or employees on how to maintain/protect/preserve minor students to prevent sexual misconduct, sexual abuse and/or harassment from occurring, including that which occurred to Plaintiff C.D.; and/or prevent and protect against retaliation against C.D. because he reported Richard Humphrey's abuses and/or cooperated with law enforcement authorities.

Plaintiff further alleges that since Humphrey engaged in similar sexual misconduct at his prior place of employment, Toyota of Scranton, defendants "CTC and the [SSD] knew or should have known of Richard Humphrey's propensity for inappropriate conduct with others before Defendant CTC with the approval of [SSD] hired Richard Humphrey to teach minor students, and did nothing in its hiring and investigation of this prospective teacher to protect students like Plaintiff C.D. from such propensity and conduct."

Additionally, plaintiff alleges that CTC and SSD should have had a policy and procedure in place to do proper background checks and

8

investigations of teachers at CTC, and that CTC and SSD should have had policies and procedures to protect students and to investigate inappropriate conduct between teachers and students.

As relief in his complaint, plaintiff C.D. seeks compensatory damages as well as attorneys' fees and costs. In addition, with respect to his two state law claims, C.D. seeks punitive damages.

Based upon the factual allegations set forth in the complaint, plaintiff raises six federal counts in which the following claims are raised: Count I, (v. defendants CTC and SSD), Title IX, 20 U.S.C. §1681; Count II, (v. defendants CTC and SSD), Title IX, 20 U.S.C. §1681, post-May 2017; Count III, (v. defendants CTC and SSD), Title IX, 20 U.S.C. §1681, Retaliation; Count IV, (v. defendants CTC and SSD), Civil Rights Violation - 42 U.S.C. §1983; Count V, (v. defendants CTC and SSD), State-Created Danger - 42 U.S.C. §1983; and Count VI, (v. defendants CTC and SSD), Failure to Train and Supervise - 42 U.S.C. §1983.[7]

Plaintiff C.D. also raises two state law tort claims, namely, Count VII, (v. defendants CTC and SSD), Negligence, and  Count VIII, (v. defendants CTC

---

[7]As the court noted in the other eight cases, plaintiff's claims under §1983 are not precluded by his Title IX claims since "none of Plaintiff['s] §1983 claims here is predicated on a violation of Title IX", and "[his] §1983 claims are constitutional ones: (1) [his] Monell claims are based on an underlying "constitutional right...to freedom from invasion...of personal security through sexual abuse," and (2) [his] state-created danger claim[] [is] similarly grounded in the Fourteenth Amendment's Due Process Clause." Does v. Southeast Delco School District, 272 F.Supp.3d 656, 666 (E.D.Pa. 2017) (internal citations omitted).

and SSD), Negligent Infliction of Emotional Distress.

The court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a) because plaintiff avers violations of federal law, Title IX, and of his due process rights under the Fourteenth Amendment of the U.S. Constitution. The court can exercise supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. §1367. Venue is appropriate in this court since the alleged statutory and constitutional violations occurred in this district and all parties are located here. *See* 28 U.S.C. §1391.

## III.    DISCUSSION

### A.    Title IX Claims, Counts I-III

### 1. Count I, Claim Prior to the ChildLine Report of 05/13/2017

SSD argues that plaintiff's claim against it under Title IX should be dismissed, i.e., in Counts I, II and III of the complaint, for failure to state cognizable causes of action. CTC only moves to dismiss Counts II and III under Title IX. The court will first discuss SSD's motion to dismiss Count I.

SSD essentially raises the same arguments with respect to Count I that it raised in the other similar cases against it. Basically, based on the same rationale which the court stated in its memorandum issued in the other cases, it finds that Count I will be allowed to proceed as against SSD.[8] *See* B.W. v. CTC, — F.Supp.3d —, 2019 WL 5692770 (M.D.Pa. Nov. 4, 2019).

---

[8]Since CTC did not move to dismiss Count I of C.D.'s complaint, this Count will also proceed as against it.

10

SSD contends that the Title IX claim must be dismissed because the plaintiff has failed to allege that any of the appropriate persons at the school district who had authority to take corrective action had actual knowledge of Humphrey's abusive conduct towards the plaintiff before the ChildLine Report of May 13, 2017 and the criminal investigation commenced by the SPD. SSD states that plaintiff only alleges that it "knew or should have known" about Humphrey's sexual harassment and abuse and that this is not sufficient to state a plausible Tile IX claim for teacher on student harassment. Also, SSD contends that plaintiff's complaint fails to specifically allege what sort of behavior was reported to SSD and that Humphrey's improper behavior was reported to an appropriate school official.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial Assistance...." 20 U.S.C. §1681(a). The United States Supreme Court has held that Title IX encompasses sexual harassment of a student and is enforceable through an implied private right of action for money damages against the school district. *See* Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60 (1992); Does v. Southeast Delco School District, 272 F.Supp.3d 656, 688 (E.D.Pa. 2017) (Title IX "forbids discrimination at educational institutions on the basis of sex, and allows recovery by victims of physical sexual abuse."). *See also* Douglas v. Brookville Area Sch. Dist., 836 F.Supp.2d 329, 342-43 (W.D.Pa. 2011) ("A teacher engages in a prohibited

form of 'discrimination' [under Title IX] when he or she 'sexually harasses and abuses a student.'") (citation omitted).

In order to establish a Title IX claim against a school district for alleged physical sexual abuse of a student by a teacher, the plaintiff must show that: (1) the school district received federal funds; (2) "an appropriate person at the school" (3) "had actual knowledge of facts indicating a substantial danger to students"; and (4) "acted with deliberate indifference to that danger." Does, 272 F.Supp.3d at 688 (citing Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 361 (3d Cir. 2005)). *See also* Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 650 (1999).

As such, to state a claim under Title IX, plaintiff must allege facts showing an "appropriate person" had notice of the abuse. "An 'appropriate person' ... is, at minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." Gebser v. Lago Vista Ind. Sch. Dist., 524 U.S. 274, 277, 290 (1998). A person's job title does not determine if he or she is an "appropriate person." "The authority to supervise a teacher and to investigate a complaint of misconduct implies the authority to initiate corrective measures such as reporting her findings to her superior or to the appropriate school board." Warren ex rel. Good v. Reading Sch. Dist., 278 F.3d 163, 173 (3d Cir. 2002). Thus, under Title IX, a determination of whether a person is an "appropriate person" is based on the person's actual authority to end the discrimination. Id. at 172. "[A] school principal who is entrusted with the responsibility and authority normally associated with that

12

position will ordinarily be an 'appropriate person' under Title IX." Id. at 171. *See also* Douglas v. Brookville Area Sch. Dist., 836 F.Supp.2d 329, 346 (W.D.Pa. 2011) ("Only an individual with the 'authority to institute corrective measures' can be fairly characterized as an 'appropriate person' under Gebser.") (citation omitted). Examples of an "appropriate person" at a school district include the superintendent, assistant superintendent, principal, and assistant principal, provided they had authority to take corrective action to end the discrimination. Lansberry v. Altoona Area School District, 318 F.Supp.3d 739, 751 (W.D.Pa. 2018).

Additionally, under Gebser, actual knowledge is required for a Title IX claim. "An educational institution has actual knowledge if it knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger." Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 361 (3d Cir. 2005) (internal quotations omitted). *See also* Warren, 278 F.3d at 171 (there must be sufficient evidence to show that "'an appropriate person' had actual knowledge of ... [the] abuse."). Actual notice cannot be based upon a mere possibility." Bostic, 418 F.3d at 361.*See also* Moeck v. Pleasant Valley Sch. Dist., 179 F.Supp.3d 442, 449 (M.D.Pa. 2016) ("the plaintiff must present evidence that she provided actual notice [of the sexual harassment] to an appropriate official at the school" to state a claim under Title IX) (citation omitted).

Further, "an 'appropriate person' must have 'actual knowledge of discrimination in the recipient's programs and fail[ ] adequately to respond.'"

Bostic, 418 F.3d at 361 (citing Gebser, 524 U.S. at 290). "[C]onstructive notice or *respondeat superior* principles [are not sufficient] to permit recovery under Title IX." Id. (citing Gebser, 524 U.S. at 285–90). Nor can Title IX liability be based on negligence. Id. (citing Gebser, 524 U.S. at 285). Thus, "Gebser ... established that a recipient intentionally violates Title IX ... where the recipient is deliberately indifferent to known acts of teacher-student discrimination." Id. (quoting Davis, 526 U.S. at 643).

Thus, for liability under Title IX, there must be both actual notice of the sexual harassment or abuse itself, and the school district must then also display deliberate indifference to that sexual harassment. Davis, 526 U.S. at 642 (citing Pennhurst State School and Hospital v. Halderman, 451 U.S. 1,17 (1981)). The school district may also only be liable in damages where their own deliberate indifference to this actual knowledge effectively causes the discrimination. Davis, 526 U.S. at 642-643 (citing Gebsner, 524 U.S. at 291) (Court held that "damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [school district's] behalf has actual knowledge of discrimination in the [district's] programs and fails adequately to respond.")). This "high standard" seeks to eliminate any risk that the [district] would be liable in damages not for its own official decision but instead for another individual's independent actions. Davis, 526 U.S. at 643 (citing Gebser, 524 U.S., at 290-291).

Ultimately, a school district is required to respond to sexual harassment

or abuse in a manner that is not "clearly unreasonable." Davis, 526 U.S. at 648-49 (school districts are "deemed to be 'deliberately indifferent' to acts of [] harassment only where the [district's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."). In order for a response to amount to deliberate indifference to discrimination, there must be "an official decision by the [school district] not to remedy the violation." Gebser, 524 U.S., at 290. *See also* Does v. Southeast Delco School District, 272 F.Supp.3d at 688 ("To show intent, Title IX plaintiffs must show that an appropriate person was personally aware of facts demonstrating a real danger to his or her student body—and that he or she made 'an official decision...not to remedy the violation.'") (citing Davis, 526 U.S. at 642).

In the instant case, plaintiff has clearly alleged that both CTC and SSD received federal funding. The court will therefore focus on the other factors regarding plaintiff's Title IX claim against SSD in Count I.

Plaintiff C.D.'s complaint, substantially similar to the complaints of the eight other students, alleges that he, along with the other student plaintiffs, was subjected to repetitive and unwelcome sexually abusive conduct by Humphrey based on his sex as a male while enrolled in SSD and attending CTC. All of the plaintiffs, including C.D., have stated many detailed and disturbing facts in their complaints to support the allegations of rampant unwanted sexual harassment and abuse by Humphrey towards the male students in his class. For example, plaintiffs have alleged that Humphrey "repeatedly made unwanted sexual advances towards the male students in

15

the class by rubbing their backs and shoulders, putting his arms around them, acting in a creepy and weird fashion, placing his hand on their thighs, groping, caressing and/or slapping their genital areas, and speaking to them in a completely inappropriate, vulgar and sexually suggestive manner." The alleged unwanted sexual advances, harassment and abuse by Humphrey towards the minor male student plaintiffs in his class, including C.D., are sufficient to show that they were subjected to discrimination and a substantial danger on the basis of their sex.

The court now considers whether plaintiff C.D.'s complaint has properly alleged that an appropriate person at SSD had actual knowledge of the physical sexual abuse and harassment by Humphrey.

The complaint alleges that Morgantini, a teacher at CTC who was aware of Humphrey's improper conduct, was a mandatory reporter of sexual abuse under Pennsylvania law, 23 Pa. C.S.A. §6311, and had an affirmative and non-delegable duty to report Humphrey's conduct and to disclose what he had witnessed and learned from students to proper authorities, including the administrators of CTC, ChildLine, and the administrators of SSD. It is alleged that many of Humphrey's improper acts occurred in an open classroom with adult teacher/teacher's aides present, including Granteed, Cheryl Shihinski and Hudak along with Morgantini. The complaint further alleges that the administrators of CTC and SSD then had a duty to disclose the report of child abuse to ChildLine and, then a duty to cooperate with authorities and the investigation. The complaint also alleges that "Morgantini in accordance with

his mandatory reporting duty under 23 Pa. C.S.A §6311 did report Mr. Humphrey's behavior to the administrators of [CTC] and [SSD], but no action was taken." Plaintiff also essentially alleges that he and other students in the automotive class at CTC reported the sexual abuse by Humphrey to "teachers and individuals in authority positions" during the 2016–17 school year, and that these persons failed to take timely action by disciplining or reporting Humphrey.

Alternatively, the complaint alleges that if Morgantini did not report Humphrey's misconduct to CTC, ChildLine, and the school districts, "then it is a direct and foreseeable consequence of [CTC's] and/or [the school district's] failure to implement and/or enforce adequate policies and procedures regarding mandatory reporting obligations and/or training school employees on how to maintain/protect/preserve minor students to prevent sexual misconduct, sexual abuse and/or sexual harassment and/or comply with their mandatory reporting obligations."

Additionally, C.D.'s complaint alleges that Humphrey's conduct was an open secret known by students, staff, and administrators of CTC during his tenure at CTC. It is further alleged that CTC and its administrators "knew or should have known of [] Humphrey's inappropriate conduct with multiple minor students in the automotive technology class, including plaintiff C.D., and should have taken some type of action to end such conduct and yet [CTC] was recklessly and deliberately indifferent to the need to monitor Humphrey and protect the minor students from sexual misconduct, sexual abuse and/or

17

harassment by [Humphrey]." C.D. also alleges that CTC failed to supervise Humphrey and to train its employees on how to comply with mandatory reporting obligations regrading sexual misconduct by staff towards students.

SSD argues that the allegations in the complaint lack the required specificity to state an actionable Title IX claim against it and that the allegations are speculative as to whether or not an appropriate person or persons of the school district had actual knowledge of any inappropriate behavior towards C.D. or other students during the relevant time periods. SSD also contends that the complaint fails to plausibly state specific facts that an appropriate person at SSD who had authority to take corrective measures had actual knowledge of any specific conduct of Humphrey and prior to the ChildLine report of 05/13/2017 and the investigation by the Scranton Police Department. It essentially contends that merely alleging Morgantini reported Humphrey's misconduct to the administrators at CTC and at the school district and, that other students reported Humphrey's misconduct to teachers and officials in authority positions is not sufficient to identify the appropriate person and to show that the appropriate person had actual knowledge of the specific misconduct by Humphrey towards C.D. and the other students in his class.

As such, SSD maintains that C.D. failed to allege that an appropriate person or persons at the district had actual knowledge of facts indicating a substantial danger him and other students from the district taking classes at CTC and, failed to allege that an appropriate person in the district acted with deliberate indifference to that danger.

"To survive a motion to dismiss on a Title IX claim, 'it is true that [a] plaintiff does not need to provide detailed factual support for its allegations ... [but] the plaintiff's allegations must amount to more than mere conclusory allegations.'" Colombo v. Bd. of Educ. for Clifton Sch. Dist., 2017 WL 4882485, at *10 (D.N.J. Oct. 29, 2017) (citation omitted).

"Title IX's exacting culpability requirement, which limits liability to those cases 'where a [school] intentionally violates the statute.'" Does v. Southeast Delco School District, 272 F.Supp.3d at 688 (citing Davis, 526 U.S. at 642).

> To show intent, Title IX plaintiffs must show that an appropriate person was personally aware of facts demonstrating a real danger to his or her student body—and that he or she made "an official decision...not to remedy the violation." Precedent is imprecise about exactly how much an appropriate person must know in order to satisfy the actual knowledge prong of the test. Gebser makes clear that "actual notice requires more than a simple report of inappropriate conduct by a teacher." To prevail, a plaintiff must prove an appropriate person knew of acts sufficiently indicating a danger of future abuse. Bostic further clarifies that the known acts must show more than a mere possibility of abuse. At the same time, because the standard is couched in terms of "danger," it necessarily contemplates liability where school officials suspect, but cannot be sure of, abusive conduct.

Id. at 688-89 (internal citations and footnote omitted).

As in the other eight cases, the court again finds that C.D.'s complaint adequately alleges actual knowledge by an appropriate person at CTC and SSD of the substantial danger to minor male students posed by Humphrey's widespread and repetitive sexually abusive conduct during the course of a school year. Plaintiff does not contend that Morgantini was the "appropriate person" under Title IX, rather he alleges that Morgantini, in accordance with

19

his mandatory reporting duties, reported what he knew based on his own observations and from what the students reported to him about Humphrey's behavior to the administrators of CTC and SSD and they failed to take action. No doubt that if an "appropriate person" of CTC and SSD had actual knowledge of Humphrey's improper conduct, then these defendants are potentially liable under Title IX, "because knowledge attributable to [that person] flows back to the [defendants] by virtue of [the person's] status as an "appropriate person." Id. at 689. Conversely, "if an 'appropriate person' lacked 'actual knowledge' of the sexual harassment, the school district cannot be found to have acted with deliberate indifference." Lansberry, 381 F.Supp. 3d at 751. Plaintiff must also allege that the "appropriate person" was deliberately indifferent to a danger of which he was aware. Since neither defendant participated in the sexual abuse and harassment directly, they "cannot be liable unless [their] deliberate indifference 'subjects' the student to harassment", i.e., "a school district's actions or inactions must at a minimum 'cause [a student] to undergo' harassment or 'make [him or her] liable to or vulnerable' to it." S.K. v. North Allegheny School District, 168 F.Supp.3d 786, 801 (W.D.Pa. 2016) (citing Davis, 526 U.S. at 645).

In the instant case, as in the other cases, there are many instances of sexually abuse by Humphrey alleged regarding all of the plaintiffs, including C.D., and as well as other student victims in Humphrey's class, and plaintiff has sufficiently alleged that an appropriate person at CTC and SSD had actual knowledge of Humphrey's repetitive misconduct before the ChildLine

Report was filed. Plaintiff has also alleged numerous facts showing SSD's and CTC's inactions and describe how these inactions caused all of the student victims "to undergo harassment or make [them] liable to or vulnerable to it." *See id.*

Also, the deliberate indifference standard "requires that [the court] 'examine the apparent gravity of the risk.'" Does v. Southeast Delco School District, 272 F.Supp.3d at 689 (citation omitted). The complaint alleges sufficient facts to show that appropriate persons at CTC and SSD had actual knowledge of substantial danger to the plaintiffs and other victim students based on the severity of sexual abuse by Humphrey in his class. *See* Bostic, 418 F.3d at 361 (Plaintiff must plead that an appropriate person was aware of underlying facts that actually indicate a substantial danger to its students.). As mentioned, plaintiffs have sufficiently alleged that appropriate persons at CTC and the school district knew of complaints regarding Humphrey's misconduct prior to the ChildLine Report and the investigation commenced by SPD and, that defendants had actual knowledge of sexual abuse by Humphrey, so plaintiffs' Title IX claims in Count I seeking to hold these defendants liable based on Humphrey's conduct can proceed.

The court finds that plaintiffs' well-pleaded facts allege the existence of continuous sexual harassment and abuse by Humphrey at CTC towards C.D. and the other male students, and that plaintiff has pled the essential elements of his Title IX claim in Count I against SSD. See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist., 43 F.Supp.3d 412, 429-30 (M.D.Pa. 2014).

Further, the parties will be able to request more information during discovery as to whom Morgantini reported Humphrey's wrongful conduct and whether the persons at CTC and SSD were appropriate persons.

Therefore, the motion to dismiss of SSD with respect to the Title IX claim in Count I of plaintiff's complaint, (Doc. 2), will be **DENIED**, and this claim will proceed against CTC and SSD.

### 2. Count II, Title IX Claim Post-May 2017

Both CTC and SSD move to dismiss Count II. The defendants style Count II of C.D.'s complaint as a Title IX claim regarding "post-harassment remedial action." Plaintiff alleges that on May 13, 2017, a ChildLine Report was initiated regarding Humphrey's behavior in the automotive technology class at CTC and an investigation was commenced by the SPD. It is then alleged that on May 15, 2017, Humphrey was suspended with pay by CTC, and that Humphrey "was subsequently forced to resign" his employment in June of 2017. Plaintiff alleges that even though defendants had actual knowledge of the abuse and the harm they suffered from Humphrey's conduct after the ChildLine Report, defendants failed to provide them with the appropriate assistance to remedy the effects of the harm they suffered. Thus, plaintiff contends that his complaint sufficiently states a Title IX claim for the time period after May of 2017.

Defendants argue that after May 13, 2017 and Humphrey's suspension, there is no allegation that he interacted in any way with plaintiff or that defendants allowed any such interaction. They maintain that once actual

notice was received by CTC and SSD reasonable steps were immediately taken to stop Humphrey's bad conduct and it was "clearly not unreasonable to suspend Humphrey and force him to resign." As such, defendants eliminated any type of contact by Humphrey with any of the students at CTC. Thus, defendants state that officials at CTC and SSD did not act unreasonably after the ChildLine Report and did not act with deliberate indifference towards plaintiff.

In Count II, plaintiff alleges that when CTC and SSD had actual knowledge of Humphrey's misconduct after the ChildLine Report, they had authority to take corrective action "to provide, offer, recommend, or coordinate adequate health, psychological, counseling and academic assistance services to [plaintiff] to help remedy the harm [he] suffered due to discrimination and harassment, including sexual abuse and harassment", but CTC and SSD chose not to do so. Plaintiff avers that due to the actions and inactions by defendants after Humphrey's arrest, defendants acted with deliberate indifference to his rights "to a safe and secure education environment." Plaintiff then alleges that defendants did not provide him with "proper support" and materially impaired his access to educational opportunities and benefits in violation of Title IX by failing to provide him with health, psychological, counseling and academic assistance services, and by failing to terminate or discipline their employees for their willful disregard or deliberate indifference to his safety and his rights.

If an appropriate person at CTC and the school districts were personally

aware of facts demonstrating a real danger to students, i.e., had actual knowledge of Humphrey's sexual abuse and harassment, then these defendants can be held liable under Title IX if they made "an official decision...not to remedy the violation." Does v. Southeast Delco School District, 272 F.Supp.3d at 688. "Actual knowledge exists if the school was aware of facts that indicated 'sufficiently substantial danger to students.'" Kobrick v. Stevens, 2017 WL 3839946, at *16 (M.D.Pa. Sept. 1, 2017), aff'd, 763 Fed.Appx. 216 (3d Cir. 2019) (citing Bostic, 418 F.3d at 361). "A clearly unreasonable response to actual notice of harassment also amounts to deliberate indifference." Kobrick, 2017 WL 3839946, at *16 (citation omitted).

"A finding of deliberate indifference depends on the adequacy of a school district's response to the harassment." S.K. v. North Allegheny School District, 168 F.Supp.3d at 801 (citation omitted). "[T]he sufficiency of the response must be viewed in accordance with the known circumstances." Id. (citation omitted). Thus, "[a] school district is 'deliberately indifferent' to sexual harassment 'only where the [school district's] response to the harassment or [failure to respond] is clearly unreasonable in light of the known circumstances.'" Lansberry v. Altoona Area School District, 318 F.Supp.3d 739, 751 (W.D.Pa. 2018) (citing Davis, 526 U.S. at 648). See also Gebser, 524 U.S., at 290 (a response amounts to deliberate indifference if there is "an official decision by the [school district] not to remedy the violation.").

Here, as in the other eight cases, C.D.'s allegations in Count II of his complaint fail to state a cognizable claim under Title IX against CTC and SSD

since the allegations do not plausibly show that these defendants acted unreasonably and with deliberate indifference after the May 2017 ChildLine Report. In fact, the allegations indicate that defendants made official decisions to remedy the abuse by Humphrey after the ChildLine Report and to prevent its recurrence. Defendants' immediate response to the sexual harassment and abuse was adequate and not "clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648. Specifically, Humphrey was immediately suspended and then, shortly thereafter, forced to resign removing the danger he posed to plaintiff and the other male students in his class. As such, Humphrey was disciplined and punished. As the court stated in the other cases, "Defendants' response after the ChildLine Report was swift and decisive, and it was sufficient based on the known circumstances at the time."

Based on the allegations, plaintiff fails to plead plausible facts to show that the defendants acted with deliberate indifference to Humphrey's misconduct after it definitively became known. Thus, plaintiff has pled an insufficient factual basis to permit a finding of deliberate indifference by defendants after the ChildLine Report.

C.D., as the other plaintiffs did, contends that the failure to take corrective action by the defendants included the failure to provide counseling and other services to the students to remedy their harm and that the failure to provide them with assistance to remedy the effects of the harm they suffered due to the misconduct of Humphrey after the ChildLine Report and after Humphrey was arrested is sufficient to proceed with his Title IX claim in

25

Count II. Plaintiff argues that defendants failed to remedy the effects of the sexual abuse they suffered by providing him with counseling and other services and, that this suffices to show defendants acted with deliberate indifference to the abuse. As the other plaintiffs did, C.D., cites to <u>Doe v. Russell Cty. Sch. Bd.</u>, 292 F. Supp. 3d 690 (W.D.Va. 2018), to support his contention that defendants were required to provide counseling services to them after they were aware of sexual abuse by Humphrey with the ChildLine Report. In <u>Doe</u>, the District Court for the Western District of Virginia found that the school district failed to remedy the effects of sexual abuse by not offering counseling services to the student victim of the abuse perpetrated by a school employee.

Defendants state that even if they failed to offer any post-remedial relief to plaintiff after Humphrey's arrest by recommending, or coordinating adequate health, psychological, counseling, and academic services as plaintiffs allege, this does not amount to a violation of Title IX since no such remedial relief is required under Title IX. Defendants contend that their response to the sexual abuse by Humphrey was not clearly unreasonable in light of the known circumstances and that they acted promptly to remedy the violation. They contend that their response to remedy the abuse by removing Humphrey was all that is required and, thus they cannot be held liable under Title IX as alleged in Count II.

"When an 'appropriate person' knows of sex-based discrimination and refuses to remedy the situation, his or her 'deliberate indifference' inevitably

*cause*s the discrimination to continue." <u>Douglas</u>, 836 F.Supp.2d at 347 (citing <u>Gebser</u>, 524 U.S. at 290–291) (emphasis original). "Title IX's statutory enforcement mechanism provides a recipient of federal financial assistance with an opportunity to end discrimination 'by voluntary means' before prospective funding is jeopardized." <u>Id</u>. As such, plaintiff "cannot hold the [defendants] liable under Title IX without establishing that the 'deliberate indifference' of an 'appropriate person or persons' caused [plaintiff students] to 'be subjected to discrimination.'" <u>Id</u>. (citations omitted). Thus, since it is not alleged that C.D., nor any of the other plaintiff students, was "subjected to [sexual abuse and harassment]" after the ChildLine Report and Humphrey's suspension, resignation and arrest, the defendants' alleged failure to provide plaintiffs with counseling and other services cannot be the basis to hold defendants liable under Title IX. <u>See</u> <u>B.W. v. CTC</u>, — F.Supp.3d —, 2019 WL 5692770 (M.D.Pa. Nov. 4, 2019).

Thus, the alleged failures of defendants in the instant case to provide counseling and other services to C.D. after the ChildLine Report did not subject him to continued sexual abuse and harassment, or make him more vulnerable to it. Once again, the court does not find the <u>Doe</u> case persuasive and in its research could not find any similar cases within the Third Circuit holding that the failure to provide plaintiff students with counseling and other services can be the basis to hold the school liable under Title IX for failing to remedy a violation.

In <u>Douglas</u>, a teacher was alleged to have been sexually abusing a

student in the school where she taught. The court in Douglas discussed whether the school district's response and remedial actions after an "appropriate person" had "actual notice" of the inappropriate sexual relationship between the teacher and the student complied with Title IX. The court in Douglas, id. at 348, stated:

> Title IX, ..., did not require the District to take a particular "form of disciplinary action" against [the teacher]. Davis, 526 U.S. at 649, 119 S.Ct. 1661. Instead, Title IX merely required the District to respond to [the teacher's] known acts of "discrimination" in a manner that was not "clearly unreasonable." Id. at 648–649, 119 S.Ct. 1661. The relevant question is whether [the school's appropriate persons] took reasonable actions to stop [the teacher's] discriminatory conduct. Warren, 278 F.3d at 170–171. [The teacher] was placed on administrative leave immediately after admitting that she had touched [the student] inappropriately.[] She submitted her resignation the next day. [ ] [The appropriate person] accepted [the teacher's] resignation and instructed her to return any school equipment or materials in her possession. [ ] The actions taken by [the appropriate persons] ended [the teacher's] discriminatory conduct. These actions were taken almost immediately after [a school employee] called the illicit relationship to the attention of the "appropriate persons." Title IX required the District to do nothing more. Davis, 526 U.S. at 648–649, 119 S.Ct. 1661.

The court in Douglas, id. at 349, concluded that "[e]ven if the remedial actions taken by [the appropriate persons] were imperfect in some respects, they were not 'clearly unreasonable in light of the known circumstances.'" (citing Davis, 526 U.S. at 648). Further, "[a] school district is not required to respond to harassment or discrimination in a specific manner, nor is the district required to eradicate all sexual harassment; however, the school district's response must be reasonable in light of the known circumstances."

28

Swanger v. Warrior Run School District, 346 F.Supp.3d 689, 705-06 (M.D.Pa. 2018).

In the present case, as in the other cases, the court finds that even if the defendants' remedial actions after the ChildLine Report were not as complete as plaintiff alleges they could have been due to their failure to provide him with counseling and other services, defendants' remedial actions, similar to those taken in the Douglas case, simply were not "clearly unreasonable in light of the known circumstances." As this court previously stated, the basis for liability under Title IX with respect to deliberate indifference "is an official decision by the [school] not to remedy the violation." Gebser, 524 U.S. at 290. Specifically, in Gebser, 524 U.S. at 290-91, a case involving a teacher who had an inappropriate sexual relationship with a minor student, the Supreme Court explained that a failure to adequately respond under Title IX, requires that the response amounts to "deliberate indifference"—or "an official decision by the [school district] not to remedy the violation." Thus, the court again finds that despite the alleged deficiencies with the defendants' post-remedial actions after the ChildLine Report, the defendants' prompt stated response was not deliberately indifferent. See B.W. v. CTC, — F.Supp.3d —, 2019 WL 5692770 (M.D.Pa. Nov. 4, 2019).[9]

---

[9]Even though the allegations of C.D. in the instant case with respect to Counts II and III are essentially the same allegations made in the complaints of the other eight plaintiffs and even though the court dismissed with prejudice these claims in the other cases, plaintiff fails to discuss in his opposition briefs
(continued...)

Therefore, the motions to dismiss of CTC and SSD with respect to Count II of C.D.'s complaint, (Doc. 2), will be **GRANTED**, and the Title IX claim in Count II will be **DISMISSED WITH PREJUDICE** against both defendants since, based on the above discussion, the court finds it would be futile to allow an amendment of these claims. *See* Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004) ("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility.").

### 3. Count III, Title IX Retaliation Claim

In Count III, plaintiff C.D., similar to the other plaintiffs, basically alleges that CTC and SSD turned a blind eye and failed to offer the plaintiff students any type of remedial measures or provide, offer, recommend, or coordinate adequate health, psychological, counseling, or academic assistance and services to the plaintiff students who were abused and harassed by Humphrey, and that they deliberately and recklessly chose not to do so in retaliation of the plaintiff students' involvement in the sexual abuse scandal by reporting the sexual abuse by Humphrey and cooperating with the law enforcement authorities.

It is also alleged that after Humphrey was arrested on May 30, 2017, "[CTC], by and through its employee, Robert Hudak, an instructional aide or paraprofessional in the automotive technology class, addressed the class in

[9](...continued)
this court's decision regarding Counts II and III granting the motions to dismiss in the other cases. See B.W. v. CTC, — F.Supp.3d —, 2019 WL 5692770 (M.D.Pa. Nov. 4, 2019).

the days after [] Humphrey's arrest and accused minor students, including [plaintiff C.D.], of being liars and attempting to ruin [] Humphrey's reputation and life, stating that he hopes that they all get what they have coming to them." (Doc. 2, ¶46).

Further, it is alleged that instead of providing appropriate support for the abuse he suffered, CTC staff singled out C.D. "as a result of direct retaliation by defendant CTC for reporting of abuse by [] Humphrey and cooperating with law enforcement authorities." (Id., ¶ 48). C.D. also alleges that SSD knew or should have known of Humphrey's improper conduct with many students and, that both defendants failed to prevent and protect him from retaliation and failed to provide "adequate" support to him, including counseling services and academic assistance in retaliation for his reporting the abuse. (Id., ¶'s 51-52, 82, 88).

"Although the statute does not specifically mention retaliation, it is settled that retaliatory conduct is within the broad prohibition of 'discrimination' made unlawful by Title IX." S.K. v. North Allegheny School District, 168 F.Supp.3d at 803 (citing Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173-74, 125 S.Ct. 1497 (2005)). No doubt that "retaliation taken against an individual because that individual has complained about sex discrimination is a covered form of discrimination under Title IX." Id. at 805 (citing Jackson, 544 U.S. at 173). "Thus, to assert a viable claim for retaliation under Title IX, Plaintiff must plead facts sufficient to plausibly show that [defendants] "retaliated against him because he complained of sex [abuse and

harassment]." <u>Frazer v. Temple University</u>, 25 F.Supp.3d 598, 615 (E.D.Pa. 2014) (citing <u>Jackson</u>, 544 U.S. at 184).

Specifically, "[t]o establish a prima facie case of retaliation, a plaintiff must show: (1) that he or she engaged in protected activity [under Title IX]; (2) defendant had knowledge of the protected activity; (3) adverse school-related action was taken against plaintiff; and (4) a causal connection between the protected activity and the adverse action." <u>S.K. v. North Allegheny School District</u>, 168 F.Supp.3d at 803-04 (citing <u>Yan v. Penn State University</u>, 529 Fed.Appx. 167, 171 (3d Cir. 2013)). Further, plaintiff must show "intentional conduct ... to recover on a claim of retaliation." <u>Id</u>. at 805. "The first step in any assessment of a retaliation claim is to identify what conduct, if any, a reasonable jury could causally link to the existence of retaliatory animus." <u>Id</u>. at 806 (citations omitted). Retaliatory animus is "(1) intentional conduct aimed at inflicting injury or harm (2) taken because of a complaint about a perceived form of prohibited conduct." <u>Id</u>. "Protected activities include complaints of sexual discrimination to the courts, government agencies, or the funding recipient." <u>Dawn L. v. Greater Johnstown School Dist.</u>, 586 F.Supp.2d 332, 374 (W.D.Pa. 2008) (citations omitted). "To establish the requisite causal connection, Plaintiff must allege facts to demonstrate either: '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" <u>Frazer</u>, 25 F.Supp.3d at 615 (citing <u>Cooper v. Menges</u>, 541 Fed.Appx. 228, 232 (3d

Cir. 2013)).

Defendants argue that plaintiff's allegations that they retaliated against him for reporting Humphrey and cooperating with law enforcement authorities through their administration and employees and that they failed to provide him with adequate support does not allege plausible facts that they took adverse action against plaintiffs, and does not allege plausible facts that a causal link existed between the protected conduct and their alleged adverse action.

As in most of the other cases,[10] the court finds that while plaintiff's allegations meet the first and second elements of a Title IX retaliation claim, they do not meet the last two elements. In particular, "the complaint does not allege specific action taken by the [defendants] that can be found to be 'materially adverse' within the meaning of Title IX's prohibition against retaliation." S.K. v. North Allegheny School District, 168 F.Supp.3d at 804. "To satisfy this requirement plaintiff must identify action that is adverse to a degree that it 'might well have dissuaded a reasonable [person] from making or supporting a charge of [or complaint about] discrimination.'" Id. (quoting Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405 (2006)); accord Dawn L. v. Greater Johnstown School Dist., 586 F.Supp.2d

---

[10]On reconsideration, after dismissing the retaliation claims in all of the other eight cases, the court reinstated the retaliation claims in Count III of the complaints only against CTC to proceed in two cases, namely, the cases of B.W., 19-1146, and J.R., 19-1150, due to the more detailed allegations of retaliation in those cases. See B.W. v. CTC, 2019 WL 6875493 (M.D.Pa. Dec. 17, 2019). C.D.'s allegations of retaliation are similar to the allegations made by the plaintiffs in the six cases in which their retaliation claims remained dismissed with prejudice.

332, 374 (W.D.Pa. 2008) ("Applying Title VII jurisprudence to Title IX retaliation claim and recognizing that to qualify as materially adverse, retaliation must be such that it would dissuade a reasonable person from making or supporting a report of alleged harassment.")).

Moreover, "[t]he assessment of whether particular conduct or action can be found to be retaliatory is to be undertaken with particular attention to the attendant and surrounding circumstances", and "[t]he examination is focused on the alleged retaliatory action and not the conduct that brought about the original claim of discrimination." S.K. v. North Allegheny School District, 168 F.Supp.3d at 804 (internal citations omitted). "[A] material adverse action is one that 'produces injury or harm'", and "[t]he standard for judging whether an identified act or course of conduct is capable of producing injury or harm is an objective one." Id. (internal citations omitted). In this regard, "'[c]ontext matters.'" Id.(citation omitted).

Additionally, plaintiff has not alleged facts that show "defendant[s] intentionally chose to fail in [their] remedial efforts in order to subject plaintiff to additional [abuse] and harassment for reporting the same." Id. at 806. "It is plaintiff's burden to make a plausible showing that the identified action intentionally was implemented to cause harm or injury because complaints were made about sexual discrimination." Id. (citation omitted). "The mere possibility that defendant intentionally failed to curb the harassment by plaintiff's [teacher] falls short of the plausible showing of intentional conduct needed to identify a form of materially adverse action needed to state a claim

34

for retaliation." Id. Here, there are insufficient facts alleged regarding how defendants took any actions "in order to inflict injury or harm on [plaintiffs] for making complaints about [Humphrey]." Id. Plaintiff alleges that the defendants took adverse action against him by singling them out and treating him differently by withholding counseling or other services from them to remedy Humphrey's abuse. However, as discussed, the failure of defendants to offer or provide plaintiff with any counseling or other services after the ChildLine Report and Humphrey's removal from CTC does not amount to deliberate indifference and thus, cannot serve as a materially adverse action with respect to plaintiff's retaliation claim.

Further, despite plaintiff's contention that he and the other students were treated differently by defendants due to their reports of Humphrey's abuse, neither he nor the other plaintiffs allege that defendants provided counseling services to other similarly situated student victims of abuse. Thus, none of the plaintiff students who reported sexual abuse by Humphrey were singled out in this respect.

Nor are there adequate factual grounds alleged of a causal connection between plaintiff's complaint and cooperation with authorities about Humphrey's sexual abuse and harassment and any materially adverse action. "Bald and conclusory assertions of cause and effect simply fall short of the level of factual setting and context required to state a claim [of retaliation under Title IX]." Id. at 806.

As in the case of S.K. v. North Allegheny School District, 168 F.Supp.3d

35

at 807, "[p]laintiff[s] ha[ve] failed to supply the factual averments and context that will permit an inference that defendant[s] harbored retaliatory animus and acted on it by engineering a particular course of additional [teacher]-based [sexual abuse and] harassment." As this court has held in the other related cases, the isolated alleged comments by a teacher's aide are not sufficient to show that defendants had a retaliatory animus towards plaintiff and the other student victims, especially since it is not alleged that any of defendants' officials were even aware of the aide's comments or condoned them.

Since plaintiff "failed to make such a plausible showing with regard to any form of intentional adverse conduct attributable to defendant[s]," "a plausible showing of a causal connection between [plaintiff's] complaints [about Humphrey and cooperation with authorities] and the alleged forms of retaliation has not been set forth." Id. Thus, since plaintiff C.D. has failed to plead plausible claim of retaliation under Title IX, the motions to dismiss of CTC and SSD with respect to Count III of the complaint, (Doc. 2), will be **GRANTED**, and the Title IX retaliation claim in Count III against both defendants will be **DISMISSED WITH PREJUDICE** since, based on the above discussion, the court finds it would be futile to allow an amendment of these claims.

**B.    Section 1983 Claims, Counts IV-VI**

**1. Count IV, Fourteenth Amendment Due Process Claims and Count VI, Failure to Train & Supervise Claims**

In Count IV of his complaint, C.D. raises basically the same allegations raised by the other plaintiff students in Count IV of their complaints. He alleges that he had the right to security, bodily integrity and to be free from sexual abuse as a public school student, and that he suffered "sexual misconduct and/or sexual abuse and/or sexual harassment" by Humphrey, an employee of defendants CTC and SSD, in violation of the Due Process Clause of the 14th Amendment. Plaintiff also alleges that CTC and the school district have unconstitutional customs and policies of "failing to investigate evidence of [their] employees' misconduct, sexual abuse and/or sexual harassment against School District students in the nature of violations of the right to personal security and bodily integrity, as well as the right be free from sexual misconduct and/or sexual abuse and/or sexual harassment, and failing to adequate supervise and train [their] employees with regard to maintaining, preserving and protecting students from violation of their right to personal security and bodily integrity." Further, plaintiff alleges that the conduct of defendants, through their agents, employees, servants, and officers and other school district personnel, 'in failing to put in place policies to adequately protect students from inappropriate conduct by teachers, was committed in deliberate and/or conscious disregard of substantial and/or unjustifiable risk of causing harm to plaintiff C.D, and was so egregious as to shock the

37

conscience." Further, the alleged conduct caused plaintiff's harm. (Doc. 2, ¶'s 97-100).

In Count VI, plaintiff C.D. alleges that CTC and SSD failed to properly train and supervise their teachers, administrators, officers, agents, and/or employees regarding how to protect their students from sexual abuse by a teacher. Specifically, it is alleged that defendants failed to properly train and supervise their staff as to mandated investigative requirements, including the following:

a) failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual violence;

b) failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects;

c) failing to promptly report [] Humphrey's sexual abuse, exploitation and/or harassment of students, including [C.D.], in accordance with their legal obligations; and

d) failing to take reasonable steps to protect plaintiff [C.D.] and other minor students from [] Humphrey's sexual abuses and/or from suffering the collateral harms and injuries [described in the complaint].

(Doc. 2, ¶133).

Plaintiff also alleges that defendants' failure to provide proper and adequate training to their teachers, administrators, officers, agents, and employees constituted a deliberate indifference to the adverse effect that

38

Humphrey's misconduct had on the students of defendants, including C.D.

Plaintiff's due process claim in Count IV and failure to train and supervise claims in Count VI are brought under §1983. The school district and CTC are state actors for purpose of §1983. *See* Kline ex rel. Arndt v. Mansfield, 454 F.Supp.2d 258, 262 (E.D.Pa. 2006).

Only SSD moves to dismiss Counts IV and VI of C.D.'s complaint. The court now jointly considers both claims as against SSD.

Section 1983 creates no substantive rights, but rather allows a plaintiff to vindicate violations of rights created by the U.S. Constitution or federal law. Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979); Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). Thus, to state a claim under §1983, the plaintiffs must show that the defendants, acting under color of state law, deprived plaintiffs of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Kaucher, 455 F.3d at 423.

The 14th Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, §1. "To prevail on a substantive due process claim, a plaintiff must prove that she has a 'fundamental' liberty interest implicating Fourteenth Amendment protection and that a defendant's conduct [concerning] said interest was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Kobrick, 2017 WL 3839946, *6 (citation omitted).

As the court in Kobrick, 2017 WL 3839946, *7, explained:

Among the fundamental liberty interests protected by substantive due process is the "right to bodily integrity." Albright v. Oliver, 510 U.S. 255, 272 (1994) (citing Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 847-49 (1992)); Phillips v. Cty. of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citations omitted). This right includes the right to be free from "invasion of ... personal security through sexual abuse." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990). In the public school context, the Third Circuit Court of Appeals has expressly held that the Due Process Clause encompasses and defends a student's right "to be free from sexual abuse by school staff."

Plaintiff essentially alleges that SSD, through its policymaking officials, maintained and endorsed policies and practices that resulted in violations of his constitutional rights. Plaintiff also alleges that SSD failed to properly train its teachers and failed to supervise its teachers to prevent the known and pervasive sexual abuse and harassment that he and the other male students were subjected to by Humphrey.

Since SSD is a municipal agency, the standards annunciated in Monell apply to it. *See* Malles v. Lehigh County, 639 F.Supp.2d 566 (E.D.Pa. 2009). Under the Supreme Court precedent of Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978), a municipality can be held liable under §1983 only if the plaintiff shows that the violation of his federally protected rights resulted from the enforcement of a "policy" or "custom" of the local government. A court may find that a municipal policy exists when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475

U.S. 469, 481 (1986)). It is also possible for a court to find the existence of a municipal policy in "the isolated decision of an executive municipal policymaker." City of St. Louis v. Praprotnik, 485 U.S. 112, 139 (1988). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Andrews, 895 F.2d at 1480 (citations omitted). There must be a "direct causal link" between the municipal policy or custom and the alleged constitutional violation. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).

Moreover, municipalities such as the school district is not liable under §1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. *See* Mann v. Palmerton Area School Dist., 33 F.Supp.3d 530, 540-41 (M.D.Pa. 2014).("Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation." (citation omitted); Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996) (Municipal liability applies "to only those constitutional torts actually caused by the municipality."). The plaintiff bears the burden of identifying the policy or custom. Id. This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. Id. Plaintiff can also show a custom by "evidence of knowledge and acquiescence." Beck, 89 F.3d at 971. If plaintiff establishes

a custom, he must also "demonstrate that, through its deliberate conduct, [defendant school] was the 'moving force' behind [his alleged due process violation]." Bd. of County Comm'rs of Bryan County v. Bryan, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997).

"Additionally, if the policy at issue relates to a failure to train or supervise municipal employees, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (citation omitted).

As the court in Poe v. Southeast Delco School District, 165 F.Supp.3d 271, 276 (E.D.Pa. 2015), explained:

> Such a failure [to train or supervise municipal employees] "can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." Berg v. Cty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). However, a plaintiff may also show deliberate indifference by presenting evidence that officials were aware of the risk of constitutional violations and the alternatives to preventing such harm, but either "deliberately chose not to pursue these alternatives or acquiesced in a longstanding policy or custom of inaction in this regard." Simmons v. City of Philadelphia, 947 F.2d 1042, 1064 (3d Cir. 1991); *see also* Canton, 489 U.S. at 396–97, 109 S.Ct. 1197 (O'Connor, J., concurring in part and dissenting in part) (suggesting a plaintiff might show "deliberate indifference" in one of two ways: by demonstrating "that policymakers were aware of, and acquiesced in, a pattern of constitutional violations," or by demonstrating that a municipality failed "to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.").

*See also* Kobrick, 2017 WL 3839946, *11 ("To prevail on a failure-to-train claim, a plaintiff must identify a training deficiency which has a 'causal nexus'

to their injuries and demonstrate that the lack of training reflects deliberate indifference to constitutional rights.") (citations omitted); Robinson v. Fair Acres Geriatric Center, 722 Fed.Appx. 194, 199 (3d Cir. 2018) ("In order for a failure-to-train claim to support Monell liability, a plaintiff must show 'that in light of the duties assigned to [the relevant employees,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.'") (citation omitted).

Further, "[d]eliberate indifference stems from government inaction, namely a [municipality's] failure to train its employees on avoiding constitutional violations." Wright v. City of Philadelphia, 685 Fed.Appx. 142, 147 (3d Cir. 2017). "To show the deliberate indifference required for a 'failure to train' claim, a §1983 plaintiff must show 'a municipal actor disregarded a known or obvious consequence of his action.'" Wright, 685 Fed. Appx. at 147 (citation omitted). "Deliberate indifference 'may stem from a failure to act despite notice [that municipal] employees continually violate citizens' rights." Lansberry, 318 F.Supp.3d at 759 (citing Wright, 685 Fed.Appx. at 147). "Ordinarily, finding policymakers deliberately indifferent based on a failure-to-train theory requires '[a] pattern of similar constitutional violations by untrained employees.'" Id. (citing Wright, 685 Fed.Appx. at 147).

SSD argues that Counts IV and VI of the complaint should be dismissed because they fail to sufficiently identify a policy or custom that it had which

caused plaintiff's injuries, and because they fail to allege facts that support a finding of deliberate indifference. SSD states that "Count IV fails to state a claim because it: fails to identify any policy, fails to identify past awareness by decision-makers, and fails to identify any Scranton School District decision-maker who failed to address any known abuse or inadequate custom, policy, or training need." SSD also states that "Plaintiff pleads no facts showing Scranton School District knew of and exhibited indifference to the alleged abuse." SSD further contends that "the Complaint fails to show a pattern of violations and show knowledge either of a pattern or of the wrongful acts, rather than, at best, rumor, about abuse or prior similar abuse, by an appropriate official."

As the court held in the other related cases, at this early stage of the case, plaintiff C.D.'s complaint sufficiently states plausible municipal liability claims against the school district (and CTC) under Monell with respect to his 14th Amendment due process claim in Count IV and his failure to train and supervise claim in Count VI. *See* Moeck v. Pleasant Valley School Dist., 983 F.Supp.2d 516, 524 (M.D.Pa. 2013). Plaintiff has adequately alleged that the school district unconstitutionally implemented or executed a policy statement, ordinance, regulation, decision or custom leading to the stated violations of their constitutional rights. Mann v. Palmerton Area School Dist., 33 F.Supp.3d at 540. "[A]n employee's actions can be determined to arise from a policy or custom 'where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so

44

obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Lansberry, 318 F.Supp.3d at 758 (citing Robinson, 722 Fed.Appx. at 198). Moreover, "[a] custom [can be] an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." K.E. v. Dover Area School District, 2017 WL 4347393 at *5-6 (M.D. Pa. 2017) (citations omitted). "A plaintiff may also establish a policy or custom when a policymaker has failed to take affirmative action despite an obvious need to correct the inadequacy of existing practice which is so likely to result in the violation of constitutional rights that inaction exhibits deliberate indifference to the need." Id.

Additionally, the plaintiff's failure-to-act claims against SSD are based, in part, on its alleged failure to respond to widely known sexual abuse by Humphrey despite his pattern of similar abuse during the school year. "To prevail on this claim, [plaintiff] must establish a practice of 'reckless indifference to instances of known or suspected sexual abuse of students by teachers', and "proof that school administrators were placed on actual notice of the abusive contact before [] constitutional liability for teacher misconduct to the district [can be imposed]." Kobrick, 2017 WL 3839946, *9 (internal citations omitted). "[N]egligent failure to discover sexual abuse [by the school] does not suffice for municipal liability." Id. at *10 (citation omitted).

As in the other cases, plaintiff C.D. has stated an abundance of facts to

show that the unlawful conduct of Humphrey regarding his repetitive and pervasive sexual harassment and abuse of minor students in his class during the school year was so obvious, open, and known as to constitute deliberate indifference on SSD's part to his constitutional rights. Plaintiff has also alleged numerous actions that both defendants could have done to prevent or limit the constant abuse by Humphrey towards his male students which occurred for a year. Based on the numerous facts alleged in the complaint and the pattern of similar constitutional violations by Humphrey towards the male students in his class, "[defendants'] policymakers' indifference may stem from a failure to act despite notice [their] employee[] continually violate [the students'] rights." Wright, 685 Fed.Appx. at 147. *See also* Kobrick, 2017 WL 38329946, *7 ("[A] custom is an act that is not formally approved but is nonetheless 'so widespread as to have the force of law'", and "[a] plaintiff may [] establish municipal liability by demonstrating that a policymaker failed to take affirmative action despite an obvious need to correct the 'inadequacy of existing practice [which is] so likely to result in the violation of constitutional rights' that inaction exhibits 'deliberate indifference' to the need." (internal citations omitted).

In the Poe case, 165 F.Supp.3d at 277, "plaintiffs [] alleged that the District's culpable policies or customs include the following: the failure to train District personnel to investigate abuse allegations; failure to conduct abuse investigations; failure to report credible allegations; failure to ensure compliance with state statutory requirements; failure to screen teacher

46

applicants for past allegations of abuse; and failure to properly discipline teachers accused of abuse", and that "these [alleged] failures reveal deliberate indifference to complaints raised by students." The court in Poe, id., found that despite the fact that "Plaintiffs have not articulated [in their complaint] what kind of baseline training was provided to personnel or what kind of allegedly-inadequate policies were in place regarding abuse investigations", "Plaintiffs have sufficiently articulated facts supporting a claim that the District's failure to implement more rigorous training and oversight amounts to deliberate indifference that caused Plaintiffs' constitutional injuries [i.e., minor student allegedly was inappropriately touched by a teacher]."

As discussed in the instant case, as well as in the other eight cases, plaintiff has alleged sufficient facts that an appropriate person of CTC and SSD had actual knowledge of the conduct of Humphrey prior to the ChildLine Report referral on May 13, 2017 and the investigation commenced by the SPD. Plaintiff has also stated plausible claims for deliberate indifference since he allege that both defendants had notice of a pattern of similar constitutional violations by Humphrey, over an extended period of time, who had not been properly trained and supervised. *See* Wright, 685 Fed.Appx. at 147. Specifically, C.D. like the other plaintiffs has alleged that defendants received, and failed to adequately respond to, previous reports of sexual harassment and abuse by Humphrey regarding male students in his class, that other personnel of CTC witnessed and were aware of the abuse, that students reported the abuse to staff, and they allege that the rights of minor students

in Humphrey's class were violated due to the known sexual abuse incidents that the defendants failed to properly address. All of the plaintiffs have also alleged many specific instances of continual unwanted sexual harassment and abuse by Humphrey towards the male students in his class, including themselves. Further, plaintiffs, including C.D., allege widespread sexual abuse and harassment of several male students by Humphrey at CTC which was common knowledge by staff and administrators that could have plausibly put defendants on notice that the constitutional rights of their students were being violated. Municipal liability of a school district regarding sexual abuse of students by teachers may be established by showing the school's "toleration, condonation[,] or encouragement" of sexual misconduct, and the inaction by school administrators "'at a minimum' [can be found to have] facilitated a pattern of abuse." Stoneking v. Bradford Area School District, 882 F.2d 720, 725, 730-31 (3d Cir. 1989).

Thus, plaintiff C.D. has plausibly alleged that, based on the known, pervasive and repetitive sexual abuse by Humphrey towards his male students at CTC over the course of the school year, the need for additional training by defendants was "so obvious" and the status quo so likely to result in constitutional violations that defendants can reasonably be said to have been deliberately indifferent to the needs of plaintiff and the other male students in Humphrey's class. In Robinson, 722 Fed.Appx. at 198, the Third Circuit explained that one of the "situations where acts of a government employee may be deemed to be the result of a policy or custom of the

48

governmental entity for whom the employee works, thereby rendering the entity liable under §1983", is "where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." (citing Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003)).

Plaintiff C.D. has also alleged that Morgantini personally observed Humphrey's misconduct and, that other staff at CTC, all of who were mandatory reporters under Pennsylvania law, were aware of it. The court has allowed all of the plaintiffs the chance to conduct discovery to determine what exactly Morgantini, as well as other staff at CTC, knew about Humphrey's improper conduct in his class, when they knew it, and whether he, or any staff, reported their observations and suspicions about Humphrey's abusive behavior to CTC and the respective school districts whose students were attending CTC and who were members of the JOC. At this stage of the case, it suffices that plaintiff has alleged that Morgantini did report Humphrey's improper conduct to the administrators of CTC and SSD, as he was legally obliged to do, and that they took no action. Where, as here, plaintiff alleges that CTC and SSD, as well as their administrators, knew or should have known that a teacher was sexually abusing and harassing several minor students in his class and that they did not take any action to end the conduct then plaintiff has alleged sufficient facts to make out a claim wherein his rights

49

to bodily security have been violated as a result of a policy or custom, thus sustaining a §1983 claim. *See* Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 730-731 (3d Cir. 1989). The court will allow plaintiff C.D., as it has allowed the other eight plaintiffs, discovery to determine if Humphrey's wrongful conduct was so open and widespread that it was also known by administrators, principals, superintendents and Board Members of the defendant school districts, particularly since all of the plaintiffs were minor students enrolled in their districts and the Board Members of their districts were on the JOC.

No doubt that if Morgantini and other staff reported Humphrey's misconduct, then defendants should have taken some action to protect the students and stop Humphrey's abusive conduct. As all of the plaintiffs have essentially stated, such evidence shows both "(1) the Defendant[s'] deliberate indifference to the need to adequately monitor Richard Humphrey and protect students from his sexual misconduct and investigate the inappropriate conduct, and (2) their failure to train school personnel on how to maintain/protect/preserve minor students to prevent sexual misconduct, sexual abuse and/or harassment from occurring." "Although failure-to-act claims [against a school district under Monell] raise difficult issues of proof because they are 'a step removed from the constitutional violation resulting from that failure,' Plaintiffs adequately allege an underlying constitutional violation: violations of [their] personal security and bodily integrity in violation of the Fourteenth Amendment by virtue of [the sexual abuse and harassment

by Humphrey], a public employee." <u>M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.</u>, 43 F.Supp.3d 412, 421 (M.D.Pa. 2014) (internal citation omitted).

Additionally, "Plaintiff[] must allege facts to support [his] claim that a policymaker had knowledge of and exhibited deliberate indifference in the face of a known threat or high likelihood of injury to [him], as required to establish <u>Monell</u> liability under a policy or custom theory", and "Plaintiff[] must allege that a policymaker was aware of the constitutionally violative sexual [abuse and harassment] while the [conduct] was ongoing." <u>Id</u>. (citing <u>Johnson v. Elk Lake Sch. Dist.</u>, 283 F.3d 138, 144 (3d Cir. 2002) (finding that absent a showing that "school officials knew of the alleged risk of sexual abuse posed by [Defendant abuser] at a time at which they could have prevented [the student's] alleged injuries," a plaintiff cannot establish "that her injuries were caused by a policy or custom of the Administration")).

Here, "Plaintiff[] ha[s] sufficiently articulated facts supporting a [<u>Monell</u>] claim that the [defendants'] failure to implement more rigorous training and oversight amounts to deliberate indifference that caused Plaintiff['s] constitutional injuries." <u>Poe</u>, 165 F.Supp.3d at 277. *See also* <u>Robinson</u>, 722 Fed.Appx. at 199-200. Plaintiff alleges that "the administrators" of defendants CTC and SSD, through Morgantini, were aware of Humphrey's open and widespread sexual abuse and harassment of his male minor students prior to the May 13, 2017 referral to CPSL. Although none of the complaints of the plaintiffs make averments that specifically attribute any knowledge of the abuse to any policymakers at CTC or the school districts, as the court has

previously stated, following discovery, all of the defendants can file summary judgment motions, if appropriate, regarding their liability under Monell. *See id.*

Thus, the motion to dismiss of SSD, (Doc. 9), with respect to Count IV, 14th Amendment due process claims, and Count VI, failure to train and supervise claims, in C.D.'s complaint, (Doc. 2), will be **DENIED**. Counts IV and VI will proceed against both CTC and SSD.

### 2. Count V, State-Created Danger Claims

In Count V of the complaint, plaintiff C.D. raises a state-created danger claim and alleges that the defendants CTC and SSD placed him in danger of being inappropriately touched by Humphrey. Specifically, the complaint allege that during the 2016-2017 school year, Humphrey made unwanted sexual advances towards several minor male students in his class at CTC, including plaintiff, and used vulgar and explicit language, constantly engaged in inappropriate and unwanted physical contact with students by groping and rubbing their genital area. (Doc. 2, ¶20, 22). The complaint also alleges that the improper conduct by Humphrey was an open secret among the students in his class, among students in other classes at CTC, and "among staff and/or administrators of [CTC and SSD]" during Humphrey's tenure there. (Id., ¶'s 24-25, 109-110). It is further alleged that several of Humphrey's inappropriate sexual abuses occurred in the classroom with at least one other adult teacher or aide present, including Joseph Granteed, Robert Hudak, and Louis Morgantini, and that employees and officials of CTC knew of Humphrey's propensity to engage in improper touching and groping of minor male

students, and were aware that Humphrey was constantly engaging in abusive contact with students. (Id., ¶'s 27-29, 32-33).

Both CTC and SSD move to dismiss C.D.'s state-created danger claim under Rule 12(b)(6). In the related eight cases, the court granted the motions to dismiss of CTC and the school districts with respect to Count V of the complaints, and dismissed with prejudice the state-created danger claims. See B.W. v. CTC, — F.Supp.3d —, 2019 WL 5692770.

"Although the Fourteenth Amendment does not generally guarantee an 'affirmative right to governmental aid or protection,' an exception exists when state actors create a danger that causes a victim harm." Poe, 165 F.Supp.3d at 277(citing Ye v. United States, 484 F.3d 634, 636 (3d Cir. 2007)). Thus, the Third Circuit has "recognized that a state actor may be held liable under the 'state-created danger' doctrine for creating danger to an individual in certain circumstances." Henry v. City of Erie, 728 F.3d 275, 281 (3d Cir. 2013) (citing Morrow v. Balaski, 719 F.3d 160, 176 (3d Cir. 2013)). Liability may attach under this doctrine "where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." Morrow, 719 F.3d at 177 (citing Kneipp v. Tedder, 95 F.3d 1199, 1205 (3d Cir. 1996)).

In order to prevail on a state-created danger theory, the plaintiffs must establish all of the following elements: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state

and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. Id. (quoting Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006)).

Defendants argue that plaintiff fails to establish the four requisite elements regarding his state-created danger claim.

Similar to the other cases, the court finds that although plaintiff C.D. has pled enough facts to satisfy the first three elements with respect to his state-created danger claim, the fourth element has not been met.

Plaintiff has alleged enough facts to show that the harm he suffered was foreseeable and fairly direct. "To adequately plead 'foreseeability,' a plaintiff must 'allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm.'" Poe, 165 F.Supp. 3d at 278 (citing Phillips v. Cty. of Alleghney, 515 F.3d 224, 238 (3d Cir. 2008)).

The complaint alleges that during the 2016-2017 school year, Humphrey made many unwanted sexual advances towards several minor male students in the class, including plaintiff, and that he also physically abused and molested the students, and that several of these incidents occurred in his classroom with at least one other adult teacher or aide present, including

Granteed, Hudak, and Morgantini. It is also alleged that defendants' employees and officials were aware of Humphrey's proclivity to engage in improper touching and groping of minor male students and, that they were aware that Humphrey was using vulgar, foul and sexually explicit language in class and constantly engaging in inappropriate conduct and abusive behavior. Additionally, the complaint alleges that it was an open secret among the students in the classes as well as the defendants' staff and administrators that Humphrey was constantly engaging in inappropriate and unwanted physical contact with his students. It is further alleged Morgantini acknowledged that he witnessed some of Humphrey's inappropriate conduct and advised the students that he would "keep an eye on [Humphrey]" and would have to "do something" and speak with others if Humphrey's behavior continued. Lastly, plaintiff avers that Humphrey's inappropriate conduct and sexual abuse was "open, widespread and known by students, staff, and defendants."

Since plaintiff has pled sufficient facts alleging that both defendants and their staff knew of Humphrey's "dangerous propensities, it is reasonable to infer that [plaintiff] could be a foreseeable victim of the foreseeable harm that would result from such [conduct]." Id. Like Phillips and the other eight cases, in this case a strong causal nexus between the defendants' alleged actions and the ultimate harm to their students, including C.D., is pled.

The second element requires the plaintiff to sufficiently allege that the defendants acted in willful disregard for or deliberate indifference to his safety.

Morse, 132 F.3d at 910. "The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (citing Dent v. West Virginia, 129 U.S. 114, 123 (1889)); see County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998); Kaucher, 455 F.3d at 425. "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." Lewis, 523 U.S. at 846 (internal citation omitted); Kaucher, 455 F.3d at 425. In a substantive due process claim, official conduct is egregious only when it "shocks the conscience and violates the decencies of civilized conduct." Lewis, 523 U.S. at 846-47 (internal citation omitted); Kaucher, 455 F.3d at 425. There is no definitive standard for "shocks the conscience," and the determination of whether conduct shocks the conscience entails an analysis of the facts in a particular case. Kaucher, 455 F.3d at 425-26. In a case like the instant one involving a claim of municipal liability, the standard for "shocks the conscience" is deliberate indifference. Lewis, 523 U.S. at 850 & n.10; Kaucher, 455 F.3d at 426-27 & n.4. Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997); Kaucher, 455 F.3d at 427 n.4.

Inherent to the concept of deliberate indifference is the awareness of a real danger. As discussed above, the complaint alleges numerous facts to show that Humphrey's actions are a fairly direct result, or "obvious consequence," of the defendants' actions. As plaintiff explains:

Defendants knew or should have known of Richard Humphrey's sexual abuse on minor male students, including Plaintiff, for a year. Defendants, their employees/agents had a year to deliberate the consequences of Richard Humphrey's sexual abuse, yet, permitted Richard Humphrey unfettered access to sexually abuse and molest the minor students, including Plaintiff. Indeed, the Complaint's allegations (taken as true) demonstrate that Defendants had actual knowledge and awareness of the risk of harm inherent in allowing Richard Humphrey continued access to the minor male students.

Thus, plaintiff's allegations sufficiently show how defendants' actions shocked the conscious and amounted to deliberate indifference, and they meet the second element.

The third element requires a plaintiff to adequately plead that he had a relationship with the state "such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general." Kaucher, 455 F.3d 431. As this court previously held in the related cases, a student attending classes within a public school district satisfies the "special relationship" element of a state-created danger claim. *See* Hamilton v. Spriggle, 965 F.Supp.2d 550, 593 (M.D.Pa. 2013); Cuvo v. Pocono Mtn. School Dist., 2019 WL 1424524, *5 (M.D.Pa. Mar. 29, 2019).

Plaintiff alleges that he was enrolled at CTC and in SSD during the 2016- 2017 school year, and that Humphrey was employed by CTC and the school district, that Humphrey was authorized to teach by CTC and the school district, and thus he was acting under color of state law.

57

Thus, plaintiff has alleged sufficient facts regarding the relationship between himself as a minor student and Humphrey, a state actor, to satisfy the third element of his state-created danger claim.

Defendants contend that plaintiff C.D. has not satisfied the fourth element because there was no affirmative action by them which made plaintiff more vulnerable than he would have been had the defendants done nothing at all. Under the fourth element, the Third Circuit has found that liability "is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." Poe, 165 F.Supp. 3d at 278 (citing Ye, 484 F.3d at 638–39 (3d Cir. 2007)). The "[fourth] element, which 'can be broken down into its parts,' requires that: '`(1) a state actor exercised his or her authority, (2) the state actor took an affirmative action, and (3) this act created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all.'" Poe, 165 F.Supp. 3d at 278 (citing Ye, 484 F.3d at 638–39 (3d Cir. 2007)). As such, in order to establish the fourth element of a state-created danger claim, the plaintiff must identify "an affirmative action, rather than inaction or omission." Phillips, 515 F.3d at 236 (citations omitted). While "the line between action and inaction is not always easily drawn," Morrow, 719 F.3d at 178, the Third Circuit has "never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised." Bright, 443 F.3d at 282. Indeed, it is a "misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Id. *See also* Lansberry,

318 F.Supp. 3d at 755 ("The affirmative act requirement 'ensures that defendants are only liable for misuse of state authority, rather than a failure to use it.'") (citation omitted). The requirement of an affirmative act serves to distinguish cases where state officials might have done more from cases where officials created or increased the risk itself. Morrow, 719 F.3d at 179 (alterations and citation omitted).

"[W]hen determining whether a state actor committed an affirmative act, a court should 'first evaluate the setting or the 'status quo' of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo.'" Lansberry, 318 F.Supp. 3d at 755 (citations omitted).

As such, "[t]he Third Circuit has repeatedly rejected attempts by plaintiffs to 'redefine clearly passive inaction as affirmative acts.'" Id. (string citations omitted). Further, "a school's failure to enforce its own policy does not constitute an affirmative act", id. at 755-56 (citations omitted), including the alleged failure of the school's staff to comply with the state-mandated reporting of sexual abuse of students under 23 Pa.C.S.A. §6311. *See* Beam v. W. Wayne Sch. Dist., 165 F.Supp.3d 200, 215 (M.D.Pa. 2016) (court dismissed state-created danger claim and held that the school's failure to comply with state-mandated plan for a special education student, who committed suicide, did not constitute an affirmative act).

Additionally, the defendants' "failure to adequately address the [sexual abuse] that [plaintiffs] suffered did not constitute an affirmative act."

<u>Lansberry</u>, 318 F.Supp. 3d at 756 (citations omitted).

As argued by plaintiffs in the related cases, plaintiff C.D. states that he has alleged that the employees of defendants knew about Humphrey's improper touching and groping of minor male students and, that they also became aware that Humphrey was engaging in inappropriate and unwanted physical contact with his minor male students, including rubbing and tapping their genital areas. It is also alleged despite this knowledge, defendants "never intervened in the classroom", and "did not warn the parents", and that one CTC/SSD's employees, i.e. Morgantini, acknowledged that Humphrey's conduct "was not right" and simply explained Humphrey' conduct by stating, "you know the way he is." Thus, plaintiff contends that his allegations "show a calculated decision that was made by Defendants which increased [his] vulnerability to harm", and that "but for the state actors authority to create the opportunity for Richard Humphrey to continuously sexually molest minor students, including plaintiffs, it would otherwise not have existed."

Here, as in the related cases, the court finds that plaintiff C.D. has not sufficiently identified an affirmative action by the defendants that caused them, and the other student victims, to be more vulnerable than he would have been had the defendants not acted at all. Rather, the plaintiff's allegations amount to a claim that it was the defendants' inaction, i.e., their failure to adequately train, supervise and monitor Humphrey and, their failure to act to stop the abuse, that put him and the other plaintiff student victims at risk. Notwithstanding plaintiff's allegations, the Third Circuit has consistently

found that "failures to act cannot form the basis of a valid §1983 [state-created danger] claim." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 433 n.11 (3d Cir. 2006); see also Bright, 443 F.3d at 284 ("failure to protect an individual against private violence does not violate the Due Process Clause."); Carlin v. Marren, 2012 WL 4717899, at *1 (E.D.Pa. Oct. 3, 2012) ("In pleading her state-created danger claim, Plaintiff points to the following conduct committed by Rescue Squad: failure to provide its members with sexual harassment training, failure to impose bunkroom policies, failure to maintain separate sleeping facilities for men and women, failure to implement adequate security measures, failure to train and supervise members and failure to restrict access to the Rescue Squad building. These allegations amount to nothing more than a series of actions not taken by Defendant. As failures to act do not render Defendant liable under the fourth element, Plaintiff fails this element and cannot proceed on a state-created danger claim."); Nawuoh v. Venice Ashby Cmty. Ctr., 802 F.Supp.2d 633, 642 (E.D.Pa. 2011) (failure to train is not an affirmative act that satisfies the fourth element); Estate of Pendelton ex rel. Pendelton v. Davis, 2007 WL 1300743, at *11 (M.D.Pa. May 3, 2007) (failures of supervision or training do not meet the affirmative act requirement of the state-created danger test).

Despite the allegations that defendants' employees were aware of Humphrey's improper conduct and sexual abuse of his minor students but failed to intervene and warn parents and authorities, the court finds that plaintiff has failed to establish how the defendants' failure to provide adequate

training, supervision and monitoring of Humphrey created a new danger for him, and the other student victims, or rendered him more vulnerable to danger than had the defendants not acted at all. Morrow, 719 F.3d at 178. Further, "while violations of the minor Plaintiffs' Fourteenth Amendment rights caused by the [defendants'] policies may properly be considered under the Plaintiffs' Monell claim, the [defendants'] [are] not [] proper defendant[s] for the state-created danger claim." Poe, 165 F.Supp. 3d at 279 (citation omitted). In fact, the court has allowed Counts IV, 14th Amendment due process claims, and Counts VI, failure to train and supervise claims, of all the complaints to proceed, under Monell, against CTC and the school districts.

As in Lansberry, 318 F.Supp. 3d at 756, "the court sympathizes with [all of the plaintiffs and the other student victims of Humphrey's abuse] and does not condone [defendants' alleged] inaction in the face of the persistent [abuse] that [Humphrey's male students] faced", and "while the [] Complaint[s] describe[] a tragic series of events, [they] fail[] to allege any affirmative use of state authority on the part of [defendants]."

Therefore, because the defendants did not affirmatively use their authority in a way that created a danger to plaintiff C.D. while he was in Humphrey's class or that rendered plaintiff more vulnerable to danger than had defendants not acted at all, the plaintiff is unable to establish a substantive due process claim under a state-created danger theory. *See* Bridges ex rel. D.B. v. Scranton Sch. Dist., 66 F. Supp. 3d 570, 582-84 (M.D. Pa. 2014). Thus, since plaintiff has failed to plead a plausible state-created

danger claim, the motions to dismiss of CTC and SSD with respect to Count V of his complaint, (Doc. 2), will be **GRANTED**, and this claim against both defendants will be **DISMISSED WITH PREJUDICE** since, based on the above discussion, the court finds it would be futile to allow an amendment of this claim.

### C. State Law Claims, Counts VII-VIII

### 1. Count VII, Negligence and Count VIII, NIED

Only plaintiff C.D. raises two state law tort claims against defendants, negligence and NIED, in addition to the six federal claims common to all nine cases. C.D. basically alleges that CTC and SSD were negligent in hiring Humphrey, in training their staff regarding sexual abuse by a teacher on his students and, in recognizing the abuse and preventing/stopping it. C.D. also alleges that due to the stated negligence of defendants, he has suffered severe emotional distress resulting in depression, stress and anxiety.

CTC and SSD move to dismiss C.D.'s state tort claims arguing that they are immune from such claims pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S.A. §8541, *et seq*. They contend that under PSTCA, agencies, such as they are, are immune from "any damages on account of any injury to a person or property caused by an act of the local agency or an employee thereof, or any other person." *See* 42 Pa.C.S.A. §8541. They further state that none of the statute's exceptions to immunity apply to plaintiff's tort claims against them, citing to 42 Pa.C.S.A. §8542.

63

In his briefs in opposition to CTC's and SSD's motions to dismiss, Docs. 18 & 19, C.D. fails to address the contentions of defendants that they are immune from damages under PSTCA with respect to his two state tort claims regarding Humphrey's sexual abuse and harassment. As such, pursuant to Local Rule 7.6, M.D.Pa., the plaintiff is deemed as not opposing the motions to dismiss with respect to Counts VII and VIII.

Moreover, §8541 of the PSTCA provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." "The PSTCA grants local agencies immunity from liability for damages caused by agency employees, subject to eight specifically enumerated statutory exceptions." Credico v. West Goshen Police, 2013 WL 6077168, *2 (E.D.Pa. Nov. 18, 2013); Nace v. Pennridge School District, 744 F.ed.Appx. 58, 67 (3d Cir. 2018) ("The PSTCA grants municipal agencies and employees statutory immunity. Section 8541 provides that 'no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.'") (citing §8541). There are eight exceptions to §8541 which are found at 42 Pa.C.S.A. §8542. Here, plaintiff C.D. is asserting two causes of action for negligence against CTC and SSD, and his claims do not fall into any of the eight enumerated exceptions.

In Vargas v. City of Phila., 783 F.3d 962, 975 (3d Cir. 2015), the Third Circuit held that the "PSTCA provides immunity to municipalities and its

employees for official actions unless the employee's conduct goes beyond negligence and constitutes 'a crime, actual fraud, actual malice, or willful misconduct.'" Thus, while an agency employee, such as Humphrey, is "not immune from liability under §8545 where [the employee's] conduct amounts to ... 'willful misconduct [i.e., an intentional tort],'" <u>Nace</u>, 744 F.ed.Appx. at 67 (quoting 42 Pa.Cons.Stat. §8550), he is not a defendant and it is not alleged that CTC and SSD engaged in willful misconduct. Rather, it is only alleged that Humphrey engaged in such conduct. Nor is it alleged that "[CTC and SSD] 'desired' for [any of the plaintiffs] to be sexually abused by [Humphrey], or that they were aware that such abuse was 'substantially certain' to occur." <u>Id</u>. (citation omitted). <u>See also Hall</u>, 43 F.Supp. 3d at 433 (The court dismissed with prejudice plaintiff's state law tort claims, including negligence and intentional infliction of emotional distress, against defendant school district in case in which it was alleged a teacher sexually abused a student since it found that "Plaintiffs have not alleged willful misconduct that would strip the Defendant[] of [its] immunity", and noting that "although Plaintiffs have stated a claim for negligent hiring, by definition, negligent acts do not include 'acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct.'"). Therefore, CTC and SSD are immune from tort liability with respect to Counts VII and VIII of C.D.'s complaint under the PSTCA. <u>See</u> <u>id</u>.

As such, the motions to dismiss of CTC and SSD with respect to Counts VII and VIII of his complaint, (Doc. 2), will be **GRANTED**, and these state law

tort claims against both defendants will be **DISMISSED WITH PREJUDICE** since, based on immunity under the PSTCA, the court finds it would be futile to allow an amendment of these claims.

## IV.     CONCLUSION

For the above stated reasons, the motions to dismiss of CTC and SSD will be **GRANTED IN PART**, and **DENIED IN PART**. Specifically, the motion to dismiss of SSD with respect to the Title IX claims in Count I of the complaint will be **DENIED**. The motions to dismiss of CTC and SSD with respect to Count II of the complaint will be **GRANTED**, and the Title IX claim in Count II will be **DISMISSED WITH PREJUDICE**. The motions to dismiss of CTC and SSD with respect to Count III of the complaint will be **GRANTED**, and the Title IX retaliation claim in Count III will be **DISMISSED WITH PREJUDICE**. The motion to dismiss of SSD with respect to Count IV, 14th Amendment due process claim, and Count VI, failure to train and supervise claim, will be **DENIED**, and these claims will proceed against CTC and SSD. The motions to dismiss of CTC and SSD with respect to Count V of the complaint will be **GRANTED**, and the state-created danger claim in Count V will be **DISMISSED WITH PREJUDICE**.

Further, the motions to dismiss of CTC and SSD with respect to Counts VII and VIII of the complaint will be **GRANTED**, and the state law tort claims in Counts VII and VIII will be **DISMISSED WITH PREJUDICE** since they are barred by the PSTCA.

An appropriate Order pertaining to both pending motions shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: March 11, 2020**

20-0088-01.wpd