UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN JOE DOE C.D,** : | |
| Plaintiff : | **CIVIL ACTION NO. 3:20-088** |
| v. : | **(JUDGE MANNION)** |
| **CAREER TECHNOLGY CENTER OF** : **LACKAWANNA COUNTY and** **SRCANTON SCHOOLD DISTRICT,** : | |
| Defendants : | |

## MEMORANDUM

Presently pending before the court is the March 23, 2020 motion of the plaintiff C.D. for reconsideration, pursuant to Fed.R.Civ.P. 59(e), of the court's March 11, 2020 Order, (Doc. 24), pertaining only to the dismissal with prejudice of the Count III retaliation claim under Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et seq.* (hereinafter "Title IX"). The motion has been fully briefed and C.D. submitted an exhibit, (Doc. 24-2). After reviewing the filings, as well as the record, the court will **DENY** plaintiff C.D.'s motion for reconsideration. The Title IX retaliation claim in Count III of C.D.'s complaint will remain **DISMISSED WITH PREJUDICE**.

**I.    LEGAL STANDARD**

Rule 59(e) provides the procedural mechanism for altering or amending a judgment that has been entered. It may be used to seek

remediation for manifest errors of law or fact or to present newly discovered evidence which, if discovered previously, might have affected the court's decision. Schumann v. Astrazeneca Pharmaceuticals, L.P., 769 F.3d 837, 848 (3d Cir. 2014) (citing Max's Seafood Café v. Quineros, 176 F.3d 669, 677 (3d Cir. 1999)); Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). A party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010); Max's Seafood Café, 176 F.3d at 677 (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). However, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus. Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995).

Reconsideration is generally appropriate in instances where the court has "misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning, but of apprehension." York Int'l Corp. v. Liberty Mut. Ins. Co., 140 F. Supp. 3d 357, 360–61 (3d Cir. 2015) (quoting Rohrbach v. AT & T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995)). It may not be used as a means to reargue unsuccessful theories that were presented to the court

in the context of the matter previously decided "or as an attempt to relitigate a point of disagreement between the [c]ourt and the litigant." Id. at 361 (quoting Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)). Thus, "a motion for reconsideration may not be used to give a litigant a 'second bite at the apple,' and therefore should not be 'grounded on a request that a court rethink a decision already made.'" Jarzyna v. Home Properties, L.P., 185 F.Supp.3d 612, 622 (E.D.Pa. 2016) (internal citations omitted). As such, "a motion for reconsideration may address 'only factual and legal matters that the Court may have overlooked' and may not 'ask the Court to rethink what it had already thought through—rightly or wrongly.'" Id. (citations omitted). Further, "[m]ere 'disagreement with the Court's decision' does not suffice." Rich v. State, 294 F.Supp.3d 266, 273 (D.N.J. 2018) (citation omitted).

**II.    DISCUSSION**

Plaintiff C.D. requests the court to reconsider the dismissal with prejudice of his Title IX retaliation claim in order to prevent a clear error of law or fact, and to prevent manifest injustice since this claim was dismissed with prejudice at the pleading stage. In particular, he seeks the court to hold its dismissal of this claim in abeyance to allow the parties to conduct further discovery with regard to the alleged retaliation. As support, C.D. submitted a portion of the deposition transcript of Dr. Thomas Bailey, CTC Administrative Director and the designated witness for CTC regarding C.D.'s pre-complaint

discovery, (Doc. 24-2), to show that CTC's administrative officials became aware that Hudak was commenting in class to students about Humphrey and "asking students a question, like, did you know any of this or what did you know or do you think happened." In particular, Bailey stated that after CTC officials became aware of the comments, Hudak was directed not to discuss the matter with students since a police investigation was pending. Shortly thereafter, Bailey stated that students told their parents that Hudak continued to make comments to students about the Humphrey case despite being advised by CTC officials not to discuss the matter. Bailey stated that after one of the parents called the police, the police then informed CTC officials about Hudak's continued comments to students, i.e., "[Hudak] made comments to the students about whether or not he felt Mr. Humphrey was guilty or had been doing [the alleged misconduct]." Bailey then stated that the police interviewed Hudak regarding his comments to students and, that CTC officials suspended Hudak and he never returned to the classroom. Subsequently, Hudak retired from CTC. Bailey also indicated that police were considering filing charges against Hudak for witness intimidation.

      C.D. contends that Bailey's admissions indicate that Hudak harassed the students about their allegations of sexual misconduct about Humphrey and that he continued his harassment of the students even after he was directed to stop the comments by CTC officials. He contends that further discovery should be permitted in light of Bailey's admissions and that he should be allowed to develop "the circumstances concerning Hudak

addressing the class in discovery to determine what, in fact the school officials knew before, during or after the time that Hudak confronted the students."

Initially, the court finds that C.D.'s complaint does not specifically allege that SSD took any adverse school-related action against him regarding his report about Humphrey's misconduct. Rather, the alleged described retaliatory actions were taken only by CTC and its staff and officials. Nor is it alleged that SSD was aware of, condoned or acquiesced in the adverse comments Hudak made to C.D. and the other students. Despite being a minor student at the time, C.D. would certainly have been aware of any such adverse actions SSD took against him after he reported the abuse by Humphrey, and thus no further discovery is warranted on this issue.

Thus, similar to the eight other plaintiffs in the related cases, C.D. failed to state cognizable Title IX retaliation claim against the school district and, the court finds no error in the dismissal with prejudice of this claim as against SSD. *See* Williams v. Pennridge School District, 2016 WL 6432906, *5 (E.D.Pa. Oct. 31, 2016) ("[T]he Third Circuit has clarified that intentional discrimination for an actionable [] Title IX claim may be demonstrated through a showing of deliberate indifference", and "to establish deliberate indifference, 'a plaintiff must show that the school district had knowledge of the alleged misconduct and the power to correct it but nonetheless failed to do so.'") (internal citations omitted).

With respect to the allegations about Hudak addressing the automotive class at CTC during the pendency of the Humphrey investigation, C.D. states that he should be allowed to conduct discovery to develop what school officials knew before, during or after the time that Hudak confronted the students, and whether his conduct was condoned by school officials.

The court stated in its March 11, 2020 Memorandum as follows:

> As in the case of S.K. v. North Allegheny School District, 168 F.Supp.3d at 807, "[p]laintiff has failed to supply the factual averments and context that will permit an inference that defendant[s] harbored retaliatory animus and acted on it by engineering a particular course of additional [teacher]-based [sexual abuse and] harassment." The isolated alleged comments by a teacher's aide [Hudak] are not sufficient to show that defendants had a retaliatory animus towards plaintiff and the other student victims, especially since it is not alleged that any of defendants' officials were even aware of the aide's comments or condoned them.

The court again finds that C.D.'s allegations about Hudak are insufficient to plausibly state a Title IX retaliation claim and that it is futile to allow C.D. any additional discovery regarding these allegations. As discussed below, C.D. has had sufficient time to conduct pre-complaint discovery regarding his stated claim. Nor is it alleged that Hudak addressed and accused only C.D., or any of the other plaintiffs in the automotive class. Rather, it is alleged that Hudak addressed the entire class, which included all of the plaintiffs. It is not alleged that C.D. and the other plaintiffs were singled out by Hudak, and it is not alleged that Hudak targeted any of the plaintiffs due to their complaints about Humphrey. Further, Hudak is not even alleged to be a teacher or to have held any supervisory position or position

- 6 -

of any authority at CTC. In fact, it is alleged that Hudak was only a teacher's aide or "paraprofessional" and, it is not alleged that he could speak on behalf of CTC or SSD. Nor is it alleged that Hudak had any authority to discipline or impose any type of sanctions on any student in the class, including C.D. and the other plaintiffs. It is not even alleged that Hudak made any specific retaliatory comment to any student in the class, including C.D. and the other plaintiffs. Rather, it is only alleged that Hudak told the class "he hopes that they **all** 'get what they have coming to them.'" (*See* Doc. 2, ¶'s 46 & 87) (emphasis added). Further, it is not alleged that after his comments to the class, Hudak actually took or attempted to take any adverse retaliatory actions against C.D. and any of the other plaintiffs because of their complaints about Humphrey. Thus, while Hudak's alleged comments were certainly ill-advised, they simply cannot be a basis for C.D.'s Title IX retaliation claim.

Moreover, despite Bailey's testimony submitted by C.D., the court once again finds that there are no allegations that CTC officials were aware of Hudak's initial comments when he made them or that they condoned them. Bailey's testimony does not alter this conclusion. Significantly, Bailey did not say that any officials of CTC acquiesced or condoned any of Hudak's Hudak's comments to the class after they became aware of them. In fact, Bailey's testimony indicates that after CTC officials were made aware of Hudak's initial comments to students he was told to stop, and that after he failed to stop, he was disciplined and suspended. Further, Bailey stated that

Hudak never returned to the classroom. Such disciplinary action against Hudak would show all of the plaintiff students in the class that Hudak did not speak for any officials at CTC and that Hudak was punished for making his comments. These facts simply cannot plausibly state a cognizable Title IX retaliation claim. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 554 (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (holding that, while the complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a claim and must state a claim that is plausible on its face) (quoting Bell Atlantic Corp. v. Twombly, supra, and providing further guidance on the standard set forth therein).

     C.D. states that "[t]here can be *no doubt* that the actions of Robert Hudak, a person in a position of authority over these students, would 'dissuade a reasonable person from making or supporting a charge of [or complaint] about discrimination under [all of the alleged] circumstances." However, as the court previously stated, the plaintiffs continued to cooperate with law enforcement authorities after all of Hudak's comments to the class and they later filed their instant lawsuits against CTC and the school districts which demonstrates that none of them were dissuaded from pursuing their charges about sexual harassment and misconduct by Humphrey.

Finally, while C.D. requests the court to allow him more time to conduct discovery regarding his Title IX retaliation claim, he completely ignores the fact that he commenced this action in state court when he filed a Writ of Summons on May 17, 2019, he did not file his complaint until January 10, 2020, thus giving him almost eight months to investigate all of his claims before he filed his complaint. In fact, the state court granted C.D.'s June 13, 2019 motion to stay the time he was required to file his complaint and to permit him "to conduct pre-complaint discovery under Pa.R.C.P. 4003.8 in order to enable [him] to prepare and file a proper complaint." (Doc. 2-1). The state court stated that "[t]he Pennsylvania Rules of Civil Procedure have long recognized that 'any party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for the preparation of pleadings…." (citing Pa.R.C.P. 4001(c)). The state court then granted C.D.'s request to conduct depositions of the designated witnesses for CTC and SSD regarding his claims of sexual abuse by Humphrey in addition to conducting paper discovery. C.D. then did conduct pre-complaint discovery regarding his claims as reflected by his deposition of Bailey on November 26, 2019.

Further, after this court issued its November 4, 2019 Order in the eight related cases, discovery commenced and C.D. certainly could have used any information uncovered in those other cases in his complaint, which largely mirrors the complaints in the other cases. As such, C.D. had more than ample time to discover the underlying facts regarding his Title IX retaliation

claim well before he filed his complaint, and he will not be permitted any further discovery for this claim.

## III.  CONCLUSION

For the above stated reasons, the motion for reconsideration of C.D., (Doc. 24), with respect to his Title IX retaliation claim in Count III of his complaint will be **DENIED** and, this claim will remain **DISMISSED WITH PREJUDICE** as against CTC and SSD. An appropriate Order shall issue.

s/ *Malachy E. Mannion*

**MALACHY E. MANNION**  United States District Judge

**DATE: April 27, 2020**
20-088-02